UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ROSE M. SHENK,

                Plaintiff,

         V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

               Defendant.

_____

**REPORT AND
RECOMMENDATION**

08-CV-152
(LEK/VEB)

## I. INTRODUCTION

In March of 2000, Plaintiff Rose Shenk filed an initial application for Disability Insurance Benefits ("DIB") under the Social Security Act.  Plaintiff alleges that she has been unable to work since January 2000 due to chronic hepatitis C, fibromyalgia, degenerative disc disease in her neck and back, severe head aches, problems with her feet, depression, and high blood pressure. Plaintiff filed a second application for DIB in November of 2001. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, through her attorneys, Hinman, Howard and Kattell, LLP, Eugene D. Faughnan, Esq. of counsel, commenced this action on February 8, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On November 6, 2009, the Honorable Norman A. Mordue, Chief United States

District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 15).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:  Plaintiff originally applied for DIB on March 13, 2000, alleging disability beginning on January 24, 2000. (T at 17, 129-131).[1]  The application was denied initially on May 22, 2000. (T at 17, 59-62, 93).  Plaintiff's request for reconsideration was denied on August 3, 2000.  (T at 64-66).  Plaintiff took no further action with respect to that application. (T at 93).

On November 8, 2001, Plaintiff filed a second application for DIB.  (T at 17, 132-34).  In that application, Plaintiff alleged a disability onset date of January 27, 2000.  (T at 18, 132).  The application was denied March 13, 2002.  (T at 67-70). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (T at 71).   The hearing was held on October 8, 2003, before ALJ John Tarrant in Binghamton, New York.  (T at 93).  Plaintiff, represented by counsel, appeared and testified.  (T at 93).  On February 5, 2004,  ALJ Tarrant issued a decision denying the application for benefits.  (T at 17, 93-100).  Plaintiff filed a request for review of that decision.  By order dated June 28, 2004, the Appeals Council remanded Plaintiff's case for further proceedings.  (T at 108-111).

A new hearing was held on March 23, 2005, in Binghamton, New York before ALJ Michael Brounoff.  (T at 686). Plaintiff, represented by counsel, appeared with an impartial vocational expert, David Festa, and testified at the hearing.  (T at 686-687).  On January

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 8).

26, 2006, ALJ Brounoff issued a decision denying Plaintiff's application for benefits. (T at 17-32). Thereafter, the ALJ's decision became the Commissioner's final decision on December 11, 2007 when the Appeals Council denied Plaintiff's request. (T at 8-10).

Plaintiff, through counsel, commenced this action on February 2, 2008. (Docket No. 1). Plaintiff later amended her complaint on February 14, 2008. (T at 4). The Commissioner interposed an Answer on June 2, 2008. (Docket No. 9). Plaintiff filed a supporting Brief on July 16, 2008. (Docket No. 11). The Commissioner filed a Brief in opposition on September 2, 2008. (Docket No. 12).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's decision be affirmed.

### III. DISCUSSION

#### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was

---

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity

4

of this analysis in <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. <u>See</u> <u>Bowen</u>, 482 U.S. at 146 n. 5; <u>Ferraris v. Heckler</u>, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. <u>See</u> 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); <u>Heckler v.</u>

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); <u>see</u> <u>also</u> <u>Rosa v. Callahan</u>, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.     Analysis**

**1.       Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2002. (T at 30).  The ALJ also found that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability, January 27, 2000. (T at 31).   The ALJ determined that Plaintiff had the following impairments considered "severe" under the Act: hepatitis C, cervical degenerative disc disease and oteoarthritis, firbromyalgia, and lumbar herniated nucleus pulposus and degenerative disc disease. (T at 31).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 31).   The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a significant range of sedentary work.  (T at 31).  Specifically, the ALJ found that Plaintiff can lift/carry ten (10) pounds occasionally and less than ten (10) pounds frequently, stand/ walk two (2) hours in an eight (8) hour work day, sit for six (6) hours in an eight (8) hour workday while periodically alternating between sitting and standing. (T at 31).  The ALJ also found that Plaintiff could push/pull ten (10) pounds occasionally and less than ten (10) pounds frequently. (T at 31).  The ALJ found that Plaintiff cannot climb, balance, crouch, or crawl and could only occasionally kneel, stoop and reach.  (T at 31).   The ALJ found that Plaintiff has no limitation to grasping or manipulating, but does need to avoid moderate exposure

to extreme temperatures, vibrations, and humidity and needed to avoid hazards.  (T at 31).

The ALJ determined that Plaintiff is unable to perform any of her past relevant work.  (T at 31).   The ALJ noted that as of her date last insured, Plaintiff was a "younger individual" as defined in 20 C.F.R. § 404.1563.  (T at 31).   The ALJ found that although Plaintiff could not perform a full range of sedentary work, there were still a significant number of jobs in the national economy that she could perform.  (T at 31).  As such, the ALJ found that Plaintiff has not been under a disability, as defined under the Act at any time relevant to the ALJ's decision. (T at 31).

As noted above, the ALJ's decision became the Commissioner's final decision on December 11, 2007, when the Appeals Council denied Plaintiff's request for review.  (T at 8-10).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  Plaintiff offers four (4) principal arguments in support of her position.  First, she asserts that the ALJ improperly found that certain of her impairments were not severe.  Second, Plaintiff argues that the ALJ did not properly weigh the medical evidence.  Third, Plaintiff contends that the ALJ presented flawed hypotheticals to the vocational expert.  Fourth, she asserts that the vocational expert used flawed data, which the ALJ then improperly relied upon.  This Court will address each argument in turn.

### a.    Severity of Impairments

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental

ability to do basic work activities. <u>See</u> 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." <u>Gibbs v. Astrue</u>, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. <u>Miller v. Comm'r of Social Sec.</u>, No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); <u>see</u> <u>also</u> 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," <u>Dixon v. Shalala</u>, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." <u>Coleman v. Shalala</u>, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" <u>Rosario v. Apfel</u>, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999)(quoting <u>Bowen v. Yuckert</u>, 482 U.S. 137, 154 n. 12 (1987)).

Plaintiff contends that the ALJ erroneously determined that her gastroesophogeal reflux disease ("GERD"), depression, alcoholism, hypertension, chronic obstructive pulmonary disease ("COPD"), bilateral carpal tunnel syndrome, and bilateral plantar facitis were not severe impairments.

With respect to GERD, the ALJ noted that although Plaintiff had been diagnosed

with that condition, there was no evidence of any functional loss related to the condition. (T at 19, 241-42).  There was an indication of "[c]hronic heartburn related to . . . excessive chocolate consumption and hiatal hernia." (T at 272).  In response to the ALJ's finding, Plaintiff offers the summary assertion that "medical evidence from all of the treating physicians as a whole" supports a finding that GERD is a severe impairment.  This Court finds that the ALJ's decision was supported by substantial evidence and that Plaintiff did not sustain her burden of establishing that this condition is severe.

Concerning Plaintiff's depression, the ALJ noted the lack of any objective evidence of this condition. (T at 19).  Indeed, in January 2000, Plaintiff denied any history of depression. (T at 582).  In January 2002, Plaintiff indicated that she was not under a psychiatrist's care and stated that she was not being treated for depression. (T at 202).  A progress note prepared by Dr. Michael J. Wasco, a medical doctor, and one of plaintiff's treating physicians, listed "situational depression" as one of Plaintiff's "other problems." (T at 523).  However, Plaintiff does not point to any psychiatric records containing such an actual diagnosis of depression, indicating that Plaintiff was treated for depression, or explaining how that condition even arguably impacted Plaintiff's ability to work. Accordingly, this Court finds that the ALJ's decision was supported by substantial evidence and that Plaintiff did not sustain her burden of establishing that this particular condition is severe.

Regarding Plaintiff's use of alcohol, the ALJ noted Plaintiff's past history of abusing alcohol, but determined that such abuse was in a period of sustained remission and therefore had "not been a severe impairment during the period of time at issue." (T at 19). The records indicated that Plaintiff was a self-described "heavy alcoholic" from the late

1970s until the early 1990s. (T at 270).  In April 1990, she was hospitalized due to bleeding in her throat caused by chronic drinking. (T at 577).  In January 2000, however, Plaintiff indicated that she had given up alcohol and, at that time, had abstained for a period of "at least" seven years. (T at 296).  Plaintiff does not point to any evidence that even arguably refutes the ALJ's determination that her alcohol abuse issue was in sustained remission and, thus, not a severe impairment during the relevant time period.

Concerning hypertension, the ALJ noted that Plaintiff had been diagnosed with that condition, but that the records indicated that it had been well controlled during the relevant time period.  In January 2001, Dr. Wasco noted that Plaintiff was "hypertensive," but that it was "under excellent control with the use of Atenolol." (T at 242).  A July 2002 note from Dr. Wasco indicated that Plaintiff's hypertension remained "under good control." (T at 417).  Plaintiff has not referenced any evidence tending to undermine the ALJ's determination that her hypertension was well-controlled with medication during the relevant period and, therefore, not a severe impairment.

With respect to COPD, the ALJ noted that, while Plaintiff's medical records referenced a diagnosis of COPD, there was no "objective evidence to support" the diagnosis and "no evidence of a pulmonary function test being performed." (T at 20).  In September 2002, Dr. Wasco indicated that Plaintiff "[p]robably has some underlying COPD . . . ." (T at 418).  Later reports from Dr. Wasco referenced "COPD, nicotine abuse" among the list of Plaintiff's "other problems." (T at 419-21).  No definitive diagnosis was ever rendered and Plaintiff does not reference any test results in the record either confirming that she suffers from COPD or indicating that such condition has more than a minimal impact on her ability to work.  Accordingly, this Court finds that the ALJ's decision was

10

supported by substantial evidence and that Plaintiff has not met her burden with regard to this alleged impairment.

Concerning carpal tunnel syndrome, the ALJ referenced the findings of Dr. Samuel Chin, who reported in August of 2002 that nerve conduction studies were consistent with "[c]arpal tunnel syndrome bilateral, left worse than right." (T at 20, 441). Plaintiff does not point to any follow-up studies, treatment, or reports indicating whether or how the carpal tunnel syndrome impacts her ability to work. Subsequent reports indicated that Plaintiff's symptoms were intermittent and mild. (T at 446, 649). As such, this Court finds that the ALJ's decision was supported by substantial evidence.

With respect to bilateral plantar facitis, this condition does not appear to have been addressed by the ALJ. However, Plaintiff does not reference any evidence in the record tending to show that this condition had a more than minimal impact on her ability to work during the relevant period. A September 2002 office visit note from Dr. Paul Dura, Plaintiff's treating rheumatologist, indicated that Plaintiff had "a minimal amount of right more than left fascia lata area discomfort." (T at 446). Plaintiff has not established any reversible error with respect to this alleged impairment.

In sum, "[a]lthough the threshold showing required in order to establish the requisite level of severity of Step Two is modest," Hulbert v. Comm'r of Social Sec., No. 6:06-CV-1099, 2009 WL 2823739, at * (Aug. 31, 2009), the medical record supports the ALJ's determination that the foregoing impairments are not severe.

### b.    Improper Weighing of Evidence

Plaintiff challenges the manner in which the ALJ weighed the evidence of record in

several respects.  First, Plaintiff notes that the ALJ gave little weight to the assessment of

Dr. David Ellison, another of Plaintiff's treating physicians, because Dr. Ellison treated

Plaintiff after September 30, 2002, which was the date of last insured status.  (T at 27).

However, Plaintiff points to the fact that the ALJ  gave substantial weight to an assessment

offered by Dr. Saeed Bajwa on July 7, 2003, which was also after the date last insured. (T

at 26).  Plaintiff contends that this discrepancy indicates that the ALJ was inclined to "pick

and choose" among the various pieces of medical evidence.

This Court finds Plaintiff's argument unavailing.  "Conflicts in evidence . . . are for

the Commissioner to resolve. White v. Comm'r of Social Security, No. 06-CV-0564, 2008

WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176

(2d Cir.1983)). Where, as here, there are conflicts in the medical evidence, it is the ALJ's

decision that controls as factfinder. Id. Where the Commissioner's decision "rests on

adequate findings supported by evidence having rational probative force, [the Court] will

not substitute [its] judgment for that of the Commissioner." Id. (citing Veino v. Barnhart, 312

F.3d at 586).

### i.     Dr. Bajwa

Dr. Bajwa began treating Plaintiff in June of 2000. (T at 334).  A November 2000

report indicated that Dr. Bajwa felt that Plaintiff could return to "light work" after "a further

course of physical therapy." (T at 340).  In July of 2003, Dr. Bajwa completed a Medical

Source Statement of Ability to Do Work-Related Activities (Physical) form.  Dr. Bajwa

opined that Plaintiff could occasionally lift/carry 10 pounds; frequently lift/carry less than 10

pounds; stand/walk for at least 2 hours in an 8 hour workday; and sit for about 6 hours in

an 8 hour workday (with periodic alternate sitting and standing). (T at 430-31).  Dr. Bajwa

further found that Plaintiff would never climb, balance, crouch, or crawl, but could occasionally kneel and stoop.  (T at 431).  Dr. Bajwa indicated that Plaintiff was limited in her ability to reach in all directions, but had no limitations with regard to handling, fingering, or feeling. (T at 432).  He noted that Plaintiff needed to avoid extremes of temperature, humidity/wetness, and hazards. (T at 434).

The ALJ noted that Dr. Bajwa's opinion "was rendered after the date last insured," but found that it related back to the relevant time period because it was "based on a course of treatment that predated the claimant's date last insured." (T at 26).  Noting that Dr. Bajwa was a "treating orthopedic specialist," the ALJ concluded that his opinion was entitled to "substantial weight." (T at 26).  This Court finds no error in this assessment.  Dr. Bajwa clearly treated the Plaintiff during the relevant time period and his assessment was provided less than a year after the date last insured.

Likewise, this Court finds no error in the ALJ's decision to afford more weight to the assessment offered by Dr. Bajwa in July 2003, as opposed to a subsequent assessment. In August of 2005, in response to a letter from the ALJ, Dr. Bajwa opined that during the relevant time period Plaintiff could frequently lift less than 10 pounds and occasionally lift/carry more than 10 pounds; stand for 2 hours in an 8-hour workday, walk for 1 hour in an 8-hour workday; sit for 4 hours in an 8 hour workday, and push/pull 10 pounds occasionally.  (T at 661).  Dr. Bajwa also noted that Plaintiff would need to alternate between sitting and standing.

The ALJ noted that Dr. Bajwa's 2005 assessment was "somewhat different" than his July 2003 findings.  The ALJ decided to afford less weight to the later assessment, noting that the earlier findings were "rendered at a time when the doctor's recollection of the

13

claimant's care and treatment was necessarily much fresher than it was at the time of rendering the later opinion . . . ." (T at 26).  Plaintiff has not established any reversible error with regard to the manner in which the ALJ reconciled this conflicting evidence.

### ii.    Dr. Ellison

In March of 2005, Dr. David Ellison adopted the July 2003 findings of Dr. Wasco, who had opined that Plaintiff could occasionally lift/carry less than 10 pounds, stand/walk for less than 2 hours in an 8-hour workday, and sit for less than 6 hours in an 8-hour workday. (T at 644-46).  The ALJ noted that Dr. Ellison's concurrence was offered nearly two years after the initial findings and two and a half years after the date last insured. (T at 27).  Moreover, the ALJ noted that Dr. Ellison did not begin treating Plaintiff until "well after her date last insured." (T at 28).  As to the underlying assessment of Dr. Wasco, the ALJ afforded that assessment lesser weight because he primarily treated Plaintiff for less acute conditions, while referring her to specialists for treatment of more serious matters (*e.g.* her neck & back complaints). (T at 27).  This Court finds no reversible error with respect to the manner in which the ALJ resolved this conflict in the evidence.

### iii.    Dr. Dura

Plaintiff also challenges the ALJ's evaluation of the opinions offered by Dr. Paul Dura, her treating rheumatologist.  In July 2003, Dr. Dura opined that Plaintiff could occasionally lift/carry 25 pounds, frequently lift/carry 10 pounds, sit for about 6 hours in an 8-hour workday, and occasionally climb, balance, kneel, crouch, crawl, and stoop. (T at 451-52).  Dr. Dura noted no limitation with regard to standing or walking. (T at 451).  The ALJ noted that Dr. Dura's assessment was based upon a treating relationship that existed prior to the

14

date last insured and afforded the findings enhanced weight due to Dr. Dura's "status as a rheumatologic specialist." (T at 27).

Plaintiff contends that Dr. Dura's findings should have been discounted because he only treated Plaintiff for her fibromyalgia and that his findings therefore only assessed her limitations arising from that particular condition. However, no such qualification is contained in Dr. Dura's assessment, which evaluated Plaintiff's overall functional abilities. Further, Plaintiff's argument could have gained some traction had the ALJ relied exclusively on Dr. Dura's assessment. In other words, if the other medical records uniformly indicated a more severe level of impairment, one might conclude that Dr. Dura had simply evaluated the limitations imposed by one particular condition. However, as discussed above and below, the ALJ's decision was based upon sources other than Dr. Dura (*e.g.* the July 2003 assessment of Dr. Bajwa, Plaintiff's treating orthopedist, and the consultative examination reports discussed below). These sources were consistent with Dr. Dura's overall assessment and provided substantial evidence in support of the ALJ's determination.

In August of 2003, shortly after offering his own assessment, Dr. Dura adopted the July 2003 findings of Dr. Wasco at the prompting of Plaintiff's counsel. (T at 483). When reconciling the conflict between Dr. Dura's own findings and his adoption of Dr. Wasco's more limited assessment, the ALJ noted the underlying weakness of Dr. Wasco's findings and decided to give more weight to Dr. Dura's original findings, rather than his single word ("yes") adoption of Dr. Wasco's. Again, this Court's role is not to second guess the manner in which the ALJ resolves conflicts in the evidence where, as here, the conflicts were resolved in accordance with the substantial evidence of record and sound reason.

iv.   **Consultative Examiners/State Agency Review**

15

Plaintiff also challenges the ALJ's decision to credit the assessment of non-treating physicians, while discounting the findings of certain of her treating providers. Dr. Jogendra Chhabra performed a consultative examination on April 25, 2000, in which he concluded that Plaintiff had "no limitation with walking and sitting and climbing a flight of stairs." (T at 323). He opined that Plaintiff had "moderate limitation with household activities." (T at 323). Dr. Chhabra's examination showed no muscle atrophy and full range of motion of all joints. (T at 322). The ALJ gave "some weight" to Dr. Chhabra's assessment, finding that it was consistent with the clinical findings and objective evidence. (T at 25). Given the other supporting evidence in the record (*e.g.* the July 2003 assessments of Dr. Bajwa and Dr. Dura), this Court finds no error in the ALJ's assessment of this evidence.

"The opinions of state agency consultative examiners may constitute substantial evidence to support an ALJ's determination, provided that there is other supporting evidence in the record." Taylor v. Astrue, 3:05-CV-1444, 2008 WL 3884356, at *13 (N.D.N.Y. Aug.18, 2008)(citing 20 C.F.R. §§ 404.1527(f), 416.927(f)); see also Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir.1993)(noting that regulations "permit the opinions of nonexamining sources to override treating sources' opinions, provided they are supported by evidence in the record.") (citing 20 C.F.R. §§ 404.1527(f), 416.927(f)).

The ALJ also noted a consultative examination performed by Dr. John Austin in December 2001, in which Dr. Austin reported full flexion, full extension, full range of motion in shoulders, elbows, forearms, wrists, hips, ankles, and fingers bilaterally, and no joint inflammation or muscle atrophy. (T at 361). Dr. Austin opined that Plaintiff was "mildly limited" with respect to personal grooming and household activities. (T at 362). Gross fine motor functions of upper extremities were also noted to be "mildly restricted." (T at 362).

Basic activities such as standing, walking, sitting, climbing, bending, crawling, lifting, carrying, pushing and pulling were noted to be "mildly restricted as well." (T at 362). The ALJ gave "some weight" to Dr. Austin's opinions "based upon the support found in his clinical findings." (T at 26). Again, this Court finds no error in the ALJ's assessment of this evidence.

In May of 2000, a State Agency review physician reviewed certain of Plaintiff's medical records and opined that she could occasionally lift and/or carry 20 pounds, frequently lift/carry 10 pounds, and stand/walk for about 6 hours in an 8-hour workday. (T at 327). The review physician concluded that Plaintiff could perform light work and return to her prior work as a bartender. (T at 327). This assessment was affirmed by a second State Agency review physician. (T at 333). The ALJ afforded "some weight" to the State Agency review physicians' assessment, but noted that it was "based on an incomplete record" and thus of "limited" utility. (T at 26). This Court finds that the ALJ appropriately weighed the State Agency review physicians' assessment in light of the overall evidence of record.

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."). In this case, Plaintiff has not demonstrated that the

17

ALJ erred by affording some limited weight to the State Agency review physicians' assessments.

### v.      Treating Physicians

Plaintiff argues that the ALJ should have afforded controlling weight to the assessments offered by Drs. Wasco, Desai, and Fluegel.

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

On July 18, 2003, Dr. Michael J. Wasco, Plaintiff's primary care physician, completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical), in which he opined that Plaintiff could frequently lift less than 10 pounds, stand/walk for less than 2 hours in an 8-hour workday, sit for less than 6 hours in an 8-hour workday, and was limited in her upper and lower extremities. (T at 478-79).  Dr. Wasco also indicated that Plaintiff could never crawl or stoop and could only occasionally climb or balance. (T at 479).  He found Plaintiff limited in terms of her ability to reach in all directions, handle and finger objects. (T at 480).  On April 1, 2005, in response to a letter from Plaintiff's counsel, Dr. Wasco indicated that the restrictions identified in his July 2003 Medical Source Statement applied during the period from December of 1999 to July 2003. (T at 651).

The ALJ decided to give less weight to Dr. Wasco's findings than that afforded to the assessments of Drs. Bajwa and Dura (Plaintiff's treating specialists).  First, the initial Medical Source Statement was completed after the date last insured.  Second, the assessment was not supported by any clinical findings.  Third, there was no evidence that Dr. Wasco evaluated or treated Plaintiff for her more serious conditions.  For example, he referred Plaintiff to specialists to address her fibromyalgia and orthopedic problems. (T at 27).

This Court is mindful of the ALJ's obligation to re-contact a treating physician to fill gaps in the evidentiary record.  See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").  However, in this case, the ALJ was not obligated to re-contact Dr. Wasco.  The ALJ's decision was independently supported by the assessments of Plaintiff's treating specialists, as set forth above.  Further, the record contains numerous

treatment notes and medical records from Dr. Wasco. (T at 228-269, 412-421, 506-525). Plaintiff does not cite to any particular records that even arguably contradict the ALJ's findings or that support her contention that the ALJ erred by assigning more weight to her treating specialists as opposed to her primary care doctor.

In August of 2003, Dr. Kamlesh S. Desai completed a Workers' Compensation form in which he indicated that Plaintiff was totally disabled from regular duties or work. (T at 493).  The ALJ gave little weight to Dr. Desai's conclusion because (1) the disability determination was an issue reserved to the Commissioner, (2) Dr. Desai did not begin treating Plaintiff until almost a year after the date last insured, and (3) to the extent that the assessment might arguably relate back to the relevant period, it was contradicted by the findings of the specialists that treated Plaintiff at that time. (T at 25, 26).  This Court finds no reversible error with regard to the ALJ's consideration of this evidence.  See Rosado v. Shalala, 868 F.Supp. 471, 473 (E.D.N.Y.1994) (citing Coria v. Heckler, 750 F.2d 245, 247 (3d Cir.1984) ("Although plaintiff's doctors had checked off that plaintiff was disabled on forms sent to the Workers' Compensation Board, the standards which regulate workers' compensation relief are different from the requirements which govern the award of disability insurance benefits under the Act. Accordingly, an opinion rendered for purposes of workers' compensation is not binding on the Secretary."); see also Crow v. Comm'r of Soc. Sec., No.01-CV-1579, 2004 WL 1689758, at *3 (N.D.N.Y. July 20, 2004) (the ALJ was not required to adopt a treating physician's opinion that Plaintiff was "totally" disabled, in part, because "the opinions were rendered in the context of [Plaintiff's] W[orkers'] C[ompensation] claim, which is governed by standards different from the disability standards under the Social Security Act").

In July of 2003, Dr. Dale Fluegel, Plaintiff's chiropractor, completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical), in which he opined that Plaintiff could occasionally lift/carry 10 pounds, frequently lift/carry less than 10 pounds, stand/walk for less than 2 hours in an 8-hour workday (with periodic alternating between sitting and standing), and never climb, balance, kneel, crouch, crawl, or stoop. (T at 434-35).   Dr. Fluegel also indicated that Plaintiff was limited with regard to her ability to reach in all directions, handle, finger, and feel. (T at 436).

The ALJ gave "little weight" to Dr. Fluegel's opinions. (T at 27). This Court finds no reversible error with respect to this decision.  As the ALJ correctly noted, chiropractors are not acceptable medical sources under the Commissioner's Regulations and their assessments are not entitled to any special weight. See 20 C.F.R. § 404.1513(a); see also Diaz v. Shalala, 59 F.3d 307, 312-314 (2d Cir.1995).  Moreover, although Dr. Fluegel later indicated that his July 2003 assessment was retroactively applicable to the relevant time period (T at 657), it was contradicted by assessments offered by Plaintiff's treating specialists during that period.

As noted above, it is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record. See Richardson, 402 U.S. at 399. Under the circumstances presented in this case, it cannot be said that the ALJ disregarded the medical evidence from Plaintiff's treating medical sources and instead substituted his lay opinion for competent medical evidence.  Rather, the ALJ carefully considered all of the evidence, including the consultative examinations and State Agency Review assessment. The ALJ's ultimate determination was made in accordance with the applicable legal standard and is supported by substantial evidence.  As such, this Court finds that the ALJ's decision in this

21

regard should be affirmed.

### c.    Hypotheticals Presented to Vocational Expert

David Festa, a vocational expert, testified at the hearing before the ALJ.  Plaintiff argues that the hypotheticals presented to the vocational expert were flawed and, thus, the ALJ's reliance on the vocational expert's responses to those hypotheticals was misplaced.

Whether a hypothetical given to a vocational is appropriate depends on whether the hypothetical fully encompasses the claimant's limitations. Magee v. Astrue, No. 5:05-CV-413, 2008 WL 4186336, at *20 (N.D.N.Y. Sept. 9, 2008) (citing Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 799 (6th Cir.1987)). "If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability." Id.

The ALJ presented hypotheticals to Mr. Festa based upon the findings of Dr. Dura (T at 731) and Dr. Bajwa (T at 732-34).  In each instance, the vocational expert assessed that a person with limitations as described by Plaintiff's treating specialists could not perform Plaintiff's past relevant work, but could perform other jobs in the national economy. (T at 731-35).  For the reasons outlined above, this Court finds that the ALJ's decision to utilize the most pertinent assessments of her treating specialists and to give those specialists the greatest weight in his hypotheticals was supported by substantial evidence.  Thus, the ALJ's reliance on the vocational expert's responses to hypotheticals based on those findings was proper.

### d.    Use of Bureau of Labor Statistics

Mr. Festa testified that considering age, education, experience, and residual

22

functional capacity, a person with limitations such as those identified by Plaintiff's treating specialists could perform work as a food checker, order clerk (Food & Beverage), cafeteria attendant, and Surveillance System Monitor. (T at 731-34). It appears that when citing the number of positions available in those occupations, the vocational expert relied upon Bureau of Labor Statistics. Plaintiff contends, without supporting citation, that the methodology employed by the Bureau of Labor is flawed and that the vocational expert and ALJ erred by relying upon the Bureau's statistics.

This Court finds this argument unavailing. As other courts in this District have noted, "[t]he regulations make specific provision for reliance on the Dictionary of Occupational Titles, Bureau of Labor statistics numbers, and the testimony of vocational experts." See Carvey v. Astrue, No. 06-CV-0737, 2009 WL 3199215, 1at *5 (N.D.N.Y. Sept. 30, 2009); Pitcher v. Astrue, No. 05-CV-0672 2008 WL 619175, at *7 (N.D.N.Y. Mar. 3, 2008) (citing 20 C.F.R. §§ 404.1566, 404.1569, 404.1569a; 20 C.F.R. Part 404 Subpart P, App. 2 § 200.00(a)(e)(2)); see also Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir.1986). Plaintiff has not identified any authority even arguably suggesting that the use of such materials in this particular case constituted reversible error.


## IV. CONCLUSION


After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the

record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating sources, and afforded Plaintiff's subjective claims of pain and other limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error.  Because this Court further finds that substantial evidence supports the ALJ's decision, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED, that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be affirmed.


Respectfully submitted,


Victor E. Bianchini
United States Magistrate Judge


Dated:   December 1, 2011

Syracuse, New York


## V. ORDERS


Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy

of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

December 1, 2011

Victor E. Bianchini
United States Magistrate Judge

25